UNITED STATES of America

v.

PETERSEN SAND AND GRAVEL, INC.

v.

LAKE COUNTY FOREST PRESERVE DISTRICT; Commonwealth Edison Company; The Tewes Company of Libertyville, Inc.; Skokie Valley Asphalt Co., Inc.; Northern Trust Bank/Lake Forest, National Association; American Fly Ash Company; and Lake County Grading Co. of Libertyville, Inc.

No. 91 C 5835.

United States District Court,
N.D. Illinois, E.D.

Dec. 26, 1991.

Jonathan C. Haile, U.S. Attorney's Office, Chicago, IL, for U.S.

John Van Vranken, Raymond T. Murphy, Steven Michael Taber, Ross & Hardies, P.C., Chicago, IL, for Petersen Sand and Gravel, Inc.

Clifford L. Weaver, Mark E. Burkland, Nicholas J. Bua, Peter M. Friedman, Burke, Bosselman & Weaver, Chicago, IL, for Lake County Forest Preserve Dist.

Alan P. Bielawski, Carolyn Klemme Gerwin, Mark D. Chutkow, Sidley & Austin, Chicago, IL, for Commonwealth Edison Co.

Thomas A. Morris, Jr., Brydges, Riseborough, Morris, Franke & Miller, Chicago, IL, Paul Eugene Thompson, Thompson & Thompson, for Tewes Co. of Libertyville, Inc. and Lake County Grading Co. of Libertyville, Inc.

Thomas A. Morris, Jr., Brydges, Riseborough, Morris, Franke & Miller, Chicago, IL, for Skokie Valley Asphalt Co., Inc.

Pamela Reasor Hanebutt, Maureen M. Crough, James F. Warchall, Sidley & Austin, Kathryn A. Buckner, Foley & Lardner, Chicago, IL, for Northern Trust Bank/Lake Forest, Nat. Ass'n.

Kevin Jason O'Brien, Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, Chicago, IL, Frederick Charles Prillaman, Stephen

Fredric Hedinger, Mohan, Alewelt, Prillaman & Adami, Springfield, IL, for American Fly Ash Co.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Plaintiff United States of America, through the Environmental Protection Agency (collectively, "the EPA") seeks to recover from defendant, Petersen Sand and Gravel, Inc. ("Petersen") costs incurred as a result of an environmental study ("the removal action") conducted by the EPA at a site once owned and operated by Petersen ("the Petersen site"). The EPA brings this action pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. Petersen moves for summary judgment on the ground that this action is barred by the applicable statute of limitations.

### BACKGROUND

The facts relevant to the determination of this motion are undisputed. In December 1986, the EPA issued a work plan for a remedial investigation and feasibility study for the environmental condition of the Petersen site.[1] The purpose of the remedial investigation was to collect and analyze data concerning the environmental condition of the Petersen site and to determine whether there was any significant environmental risk posed by chemical contamination. 40 C.F.R. § 300.430(d)(1). If the remedial investigation uncovered any significant environmental problems, then a feasibility study would be conducted in order to develop and evaluate alternative remedies. 40 C.F.R. § 300.-430(e)(1).

On April 4, 1988, the EPA issued its final remedial investigation report. The report concluded that the chemical contaminants at the site presented little risk to public health and the environment.[2] As a result of this finding, the EPA chose the "no action" remedial alternative and decided that a feasibility study was not necessary. On September 14, 1988, the EPA issued its formal decision,

---

1. A copy of the work plan is attached to the EPA's memorandum as exhibit A.

2. Portions of the report are attached to Petersen's memorandum as exhibit D.

stating that the selected remedial alternative for the Petersen site is "no further action."[3] The EPA filed this lawsuit to recover its costs for these actions on September 13, 1991.

### DISCUSSION

Summary judgment must be granted when the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 360 (7th Cir.) (*per curiam*), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987). The sole issue is whether this action is barred by the applicable statute of limitations. Both parties agree that the remedial investigation and feasibility study constitutes a "removal action" within the meaning of CERCLA, and that the applicable statute of limitations is codified at 42 U.S.C. § 9613(g)(2)(A) ("§ 9613"). That statute states in relevant part:

> An action for recovery of the costs referred to in section 9607 or this title must be commenced—
>
> (A) for a removal action, within 3 years after completion of the removal action. . . .

Petersen asserts that the removal action was completed when the remedial investigation report was issued on April 4, 1988. Since this action was not filed until September 13, 1991, Petersen argues that this action is time-barred by § 9613. In response, the EPA asserts that the removal action was not completed until its decision was issued on September 14, 1988. On this basis, the EPA argues that this action is timely under § 9613.

■ CERCLA does not define the terms "completion" or "removal action." However, CERCLA does define "removal" as follows:

> (T)he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment,

such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

42 U.S.C. § 9601(23). Clearly, the term "removal action" encompasses more than simply physically removing contaminants from a site. It also involves the assessment and evaluation of environmental risks posed by contaminants. However, it is not clear from the statute whether a remedial investigation and feasibility study removal action is completed when the remedial investigation or feasibility study report is issued, or when the EPA formally chooses a remedial alternative by issuing its decision.

In support of its theory, Petersen relies heavily upon an EPA policy memorandum dated June 12, 1987. The policy memorandum states as follows:

> As a matter of policy, the (EPA) views completion of the removal action as the day the cleanup contractor demobilizes at the site and completes the scope of work identified in the original or modified action memorandum. . . . Remedial investigations/feasibility studies (RI/FS) may fall within the statutory definition of removal action. For purposes of cost recovery they should be treated as a separate removal action. Therefore a cost recovery action should be commenced within three years of completing the original removal (exclusive of the RI/FS) unless physical construction has started.

On this basis, Petersen argues that the remedial investigation and feasibility study removal action was complete when the remedial investigation report was issued. However, there are several different types of removal actions. The policy memorandum appears to primarily address a removal action involving an actual physical cleanup at the site pursuant to an "action memo."[4] There

---

**3.** The EPA's decision is attached to Petersen's memorandum as exhibit B.

**4.** The EPA notes that the "action memo" probably refers to a different kind of removal action conducted by the Emergency Response Branch

was no physical cleanup or action memo in this case. The policy memorandum also appears to treat remedial investigation and feasibility study removal actions separately, and provides no guidance on when a remedial investigation and feasibility study removal action is considered to be "complete."

In support of its position that the remedial investigation and feasibility study removal action was not complete until the EPA decision was issued, the EPA cites the only two cases that have addressed this issue. In *United States v. R.A. Corbett Transport, Inc.*, 785 F.Supp. 81, 82 (E.D.Tex.1990), the defendant moved for summary judgment on the ground that the EPA's action was time-barred under § 9613.[5] The court decided that the remedial investigation conducted between December 1987 and May 1988, and the issuance of the EPA decision on September 16, 1988, was a single "removal action" under the meaning of CERCLA. The court then concluded:

> The present suit was filed on October 13, 1989, approximately thirteen months following the [EPA decision]. Said suit is, therefore, within the three-year limitation set forth in 42 U.S.C. § 9613(g)(2).

*Id.* at 82. Thus, the *Corbett* court considered the issuance of the EPA decision as the completion of the remedial investigation removal action and the commencement of the running of the statute of limitations.

The only other case to address this issue is *United States v. Jack Allen*, 1990 WL 339488, *6 (W.D.Ark.1990).[6] In *Jack Allen*, the EPA sought to recover its costs for a removal action. In response to the EPA's motion for summary judgment, the defendant argued that the EPA's action was time-barred under § 9613 because the EPA's on-site activity had concluded on April 17, 1987, and the complaint was not filed until April 23, 1990. In response, the EPA asserted

that the removal action was not complete until the EPA made a determination that further on-site activity was not necessary. The court held:

> Clearly, the term removal (as defined by CERCLA) is not limited to on-site activity and includes the time needed to dispose of the removed material as well as the time needed to evaluate the need for further activity. Defendants have not alleged that the EPA unnecessarily delayed in making the determination that no further on-site activity was needed. We, therefore, conclude that this suit was timely filed under 42 U.S.C. § 9613(g)(2)(A).

*Id.* at *6. Thus, *Jack Allen* appears to support the EPA's contention that the remedial investigation and feasibility study removal action was not complete until the EPA formally determined that no further on-site activity was needed by issuing its decision. Finally, the EPA cites its Superfund Program Management Manual, Fiscal Year 1992, Volume 2 ("the Superfund Manual"), which states that the remedial investigation and feasibility study is complete with the signature of the EPA decision.[7]

Petersen is unable to cite any authority to the contrary. Petersen does argue, however, that the Superfund Manual relies upon current EPA regulations that were not in effect in 1988, when the remedial investigation took place. Petersen asserts that the applicable EPA regulations in 1988 ("the 1988 regulations") made no mention of an EPA record of decision, and thus the decision cannot be considered to have been an integral part of the remedial investigation and feasibility study process in 1988.[8]

Petersen misconstrues these regulations. Although it is true that the term "record of decision" does not formally appear in the 1988 regulations, the 1988 regulations clearly

of the EPA. The remedial investigation and feasibility study action at the Petersen site was conducted by the Remedial Response Branch of the EPA.

5. Attached to the EPA's memorandum as exhibit F.

6. Attached to the EPA's memorandum as exhibit G.

7. Superfund Manual at D–7. The Superfund Manual was issued in June 1991, and is attached to the EPA's memorandum as exhibit E.

8. A copy of these regulations, which were issued in 1987, is attached to Petersen's reply memorandum as exhibit A. The regulations include 40 C.F.R. § 300.1 *et seq.*

spell out the remedial investigation and feasibility study process, culminating in the EPA's formal "selection of a remedy." *See* former CFR 40 CFR 300.68(d)–(i). This formal "selection of a remedy" is, of course, the record of decision. Courts that have interpreted both the current regulations and the 1988 regulations have consistently held that the remedial investigation and feasibility study process involves three steps. First, the EPA prepares its remedial investigation and feasibility study report. However, this report is only a recommendation. In the second step, the EPA evaluates the remedial investigation and feasibility study report and formally decides the appropriate remedy for the site in question. Finally, the EPA publishes its remedy selection by issuing a record of decision. The EPA decision signifies the EPA's formal disposition. Thus, the record of decision serves as the EPA's final action in the remedial investigation and feasibility study removal action process. *See e.g. In re Combustion Equipment Associates, Inc.*, 838 F.2d 35, 36 (2nd Cir.1988); *In re Chateaugay Corp.*, 112 B.R. 513, 518 (S.D.N.Y.1990) (EPA completes three steps before undertaking remedial action: (1) prepares remedial investigation and feasibility study; (2) selects an appropriate remedy; and (3) issues a record of decision); *United States v. Rohm & Haas Co.*, 721 F.Supp. 666, 674 (D.N.J.1989) (after remedial investigation and feasibility study is completed, EPA then chooses a remedial alternative and issues a record of decision); *O'Leary v. Moyer's Landfill, Inc.*, 677 F.Supp. 807, 811 (E.D.Pa. 1988) (same); *Cabot Corp. v. United States Environmental Protection Agency*, 677 F.Supp. 823, 825 (E.D.Pa.1988) (same).

■ Whenever a defendant seeks to apply a statute of limitation in order to bar a governmental action, the statute of limitation must be strictly construed in favor of the government. *United States v. Mottolo*, 605 F.Supp. 898, 902 (D.N.H.1985). In addition, the remedial intent of CERCLA requires a liberal statutory construction in order to avoid frustrating its purpose. Accordingly, § 9613 must be afforded a broad and liberal construction so as to avoid limiting the liability of those responsible for cleanup costs beyond the limits expressly provided. *Id.;*

*United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100, 1110–1112 (D.Minn. 1982).

■ For the above reasons, the court concludes that the issuance of the record of decision is an integral part of the remedial investigation and feasibility study process. Consequently, the statute of limitations begins running when the remedial investigation and feasibility study removal action are completed by the EPA's issuance of its record of decision. The EPA decision was issued on September 14, 1988, and the complaint was filed on September 13, 1991. Therefore, this action is timely under § 9613.

### CONCLUSION

Petersen has failed to carry its burden of demonstrating that it is entitled to judgment as a matter of law. Accordingly, the motion for summary judgment is denied.