
UNITED STATES of America, Plaintiff,

v.

CITY OF ABERDEEN, MISSISSIPPI;
and Board of Supervisors of Monroe
County, Mississippi, Defendants,

v.

UNITED STATES of America, and United
States Environmental Protection Agen-
cy, an agency of the United States of
America, Counter Defendants,

v.

VERTAC CHEMICAL CORPORATION
and Mississippi Department of Environ-
mental Quality, Third–Party Defen-
dants.

Civil Action No. 1:94CV304–S–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

June 19, 1996.

Jim Ming Greenlee, U.S. Attorney's Office,
Oxford, MS, Lori Jonas, J. Michael Rockett,
U.S. Department of Justice, Environment &
Natural Resources Division, Washington,
DC, Jon M. Lipshultz, U.S. Department of
Justice, Environmental Defense Section, En-
vironment & Natural Resources Division,
Washington, DC, for plaintiff.

J. Lawson Hester, Crosthwait Terney,
Jackson, MS, for City of Aberdeen, Missis-
sippi and Board of Supervisors of Monroe
County, Mississippi.

Jon M. Lipshultz, U.S. Department of Jus-
tice, Environmental Defense Section, Envi-
ronment & Natural Resources Division,
Washington, DC, for United States Environ-
mental Protection Agency.

Rickey T. Moore, Mississippi Attorney
General's Office, Jackson, MS, Roy H. Furrh,
Mississippi Department of Environmental
Quality, Jackson, MS, for The Mississippi
Department of Environmental Quality.

Robert R. Ross, Arnold, Grobmyer & Ha-
ley, Little Rock, AR, for Vertac Chemical
Corporation.

*MEMORANDUM OPINION GRANTING*
*PLAINTIFF'S MOTION FOR SUM-*
*MARY JUDGMENT AS TO THE*
*STATUTE OF LIMITATIONS*

SENTER, Chief Judge.

This lawsuit is an action to recover the cost
associated with the removal and disposal of
hazardous waste from the Prairie Metals
Site. The cause of action is before the court
on the cross-motions of the plaintiff and de-
fendants for summary judgment as to wheth-
er the case was filed within three years of
the completion of that removal. The defen-
dants (hereinafter referred collectively as
"Aberdeen") argue that the removal was
completed more than three years prior to the
filing of this cause of action. The plaintiff
(hereinafter referred to as "United States" or
"government") argues that the Prairie Met-
als Site was monitored, assessed, and evalu-
ated within three years of the date that the
complaint was filed.

*Summary Judgment Standard*

On a motion for summary judgment, the court must ascertain whether there is a genuine issue of material fact. Fed.R.Civ.P. 56(c). This requires the court to evaluate "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The United States Supreme Court has stated that "this standard mirrors the standard for directed verdict ... which is the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511 (citation omitted). Further, the Court has noted that the "genuine issue" summary judgment standard is very similar to the "reasonable jury" directed verdict standard, "the primary difference between the two being procedural, not substantive." *Id.* at 251, 106 S.Ct. at 2512. "In essence ... the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment has been filed, it is incumbent upon the non-moving party to then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553; *see also, Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 221–23 (5th Cir.1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512 (citation omitted). But the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 255, 106 S.Ct. at 2513–14.

It should be pointed out, though, that if the " 'evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions.' " *In re Placid Oil Co.,* 932 F.2d 394, 398 (5th Cir. 1991) (quoting *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1124 (5th Cir.1978)). The *Placid* court recognized, "[I]t makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when the same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts." *Id.* (emphasis added).

*Facts*

On January 10, 1964, title to the real property which includes the physical premises of the Prairie Metals Site was conveyed by quitclaim deed by the United States of America to the City of Aberdeen, Mississippi and Monroe County acting for and on behalf of the Fourth Supervisor's District. Between 1973 and 1977, Prairie Metals and Chemical Company leased the premises and operated a chromium production facility. In 1985, the EPA discovered chromium, arsenic, and lead contamination at the Prairie Metals Site. One building on the site contained large mounds of high-chromium, ferrous ammonium sulfate (FAS), a waste by-product. One open lagoon contained chromium contaminated cooling water. One filled disposal lagoon contained an unknown number of buried drums. In addition, soil under and around the buildings and lagoons contained high concentrations of chromium. In 1988, the EPA hired Ensite, Incorporated to begin excavating contaminated material and to research disposal options. In 1990, the EPA hired Westinghouse Haztech as the Emergency Response Contractor System (ERCS) contractor. Haztech was responsible for, along with other things, treating wastewater stored

in a covered lagoon, removing drums buried in the lagoon, excavating chromium-contaminated soil, and solidifying the soil. Haztech's contract, after multiple amendments, lasted until December 31, 1991. The EPA also contracted with Roy F. Weston, Incorporated to act as the technical assistance team (TAT), responsible for monitoring the ERCS contractor, designing a site health and safety plan, assisting in planning the removal action, and determining that all contamination had been removed and disposed of properly. The government asserts a claim for reimbursement of $1,398,044.00 which the EPA allegedly expended under a CERCLA fund-financed "clean up" of the thirty acres known as the Prairie Metals Site.

Treatment of the contaminated soil was completed at the Prairie Metals Site on August 22, 1991. A total of seven thousand four hundred (7400) cubic yards of soil was solidified with six hundred and fifty (650) tons of Portland cement. Demobilization of the personnel and equipment was completed on August 30, 1991. Bell and Sons Trucking Company was subcontracted to build a cap over the waste cell and spread grass seed in order to establish a vegetative cover on the cap. Mr. Bell stated in his affidavit:

> Upon my completion of the agreed upon work on October 16, 1991, there was no other ongoing work performed at the premises of Prairie Metals Superfund Site. Upon completion of my agreed upon work, there was no equipment remaining at the site nor were any other activities ongoing at the premises of the Prairie Metals Superfund Site.

In December 1991, in order to determine whether any additional work was necessary and to make sure that the removal had been successfully completed, Warren Dixon, EPA's on scene coordinator, asked the TAT to inspect the Prairie Metals Site. In response, TAT's inspector, Ayon Walters, visited the site on December 23, 1991, to photograph the completed work. An interim report, dated January 22, 1992, concluded that "the site visit and photos revealed that the site was backfilled and graded, but no grass was planted." In June 1994, James Bell is alleged to have told Wilda Cobb, Assistant Regional Counsel for the Environmental Protection Agency, that he had seeded the Prairie Metals Site in March or April of 1992. This cause of action was filed on October 28, 1994.

### Discussion

"An initial action for recovery of cost must be commenced—(A) for a removal action, within 3 years after completion of the removal action...." 42 U.S.C. Section 9613(g)(2)(A).

> The terms "remove" or "removal" means [sic] the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary [sic] taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for, and any emergency assistance which may be provided under the Disaster Relief and Emergency Assistance Act.

42 U.S.C. Section 9601(23). The complaint for this cause of action having been filed on October 28, 1994, and the three year statute of limitations applying, the plaintiff must have performed something as part of the removal action after October 28, 1991, or this action is time barred.

In *United States v. Chromatex, Inc.,* 832 F.Supp. 900 (M.D.Pa.1993), the government brought an action to recover removal costs incurred in cleanup of a hazardous waste site. The defendants argued that the complaint had not been filed within three years of the last removal action taken in the cleanup. The government alleged that it had conducted three events which fell within the ambit of

"actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, . . . ."

On October 31, 1988, there was a inspection of remote water meters which had been installed at three of the homes affected by the release. On November 3, 1988, photographs were taken at the site to verify that work at the site had been performed successfully. Finally, on November 15, 1988, the final pollution report was completed by the Technical Assistance Team.

*Chromatex,* 832 F.Supp. at 902. The court concluded that all of this work which was done after October 30, 1988, was clearly related to the assessment of the work that had been performed on the site. The *Chromatex* court reasoned that since statute of limitations are to be construed liberally in favor of the government, then the events after October 30, 1988, fell within the meaning of removal. Additionally, the court recognized that the running of the statute of limitations was completely within the control of the government, in the absence of proof that the government was dilatory in finalizing the removal. It is pertinent to the case before the bar that the photographs taken to verify the performance of work in *Chromatex* were considered to be an event within the definition of removal. In this case the TAT was allegedly instructed to photograph the Prairie Metals Site in order to determine whether the work subcontracted to James Bell had been completed.

*United States v. Davis,* 882 F.Supp. 1217 (D.R.I.1995), considered the issue of whether the removal action at the site was limited to taking the drums off the site, or whether it included the Remedial Investigation and Feasibility Study (RI/FS) and the issuance of the Record of Decision (ROD). The *Davis* court held that "to decide that a removal action is over when the physical removal is over but before the process of monitoring, assessing and evaluating the damage has come to completion violates the clear sense of the statutory language." *Id.* 882 F.Supp. at 1226.

Clearly, the term removal (as defined by CERCLA), is not limited to on-site activity

and includes the time needed to dispose of the removed material as well as the time needed to evaluate the need for further activity. Defendants have not alleged that the EPA unnecessarily delayed in making the determination that no further on-site activity was needed. We therefore conclude that this suit was timely filed under 42 U.S.C. Section 9613(g)(2)(A).

*Davis,* 882 F.Supp. at 1226 (*quoting United States v. Jack Allen,* No. 90–2093, 1990 WL 339488, *6 (W.D.Ark. Nov. 6, 1990)); *see also United States v. Rohm and Haas Company,* 790 F.Supp. 1255, 1264 (E.D.Pa.1992) ("The limitation period begins to run as of the time when all contamination has been removed. However, 'removal' is not confined to on-site removal"); *United States v. Petersen Sand and Gravel, Inc.,* 824 F.Supp. 751, 755 (N.D.Ill.1991) ("the record decision serves as the EPA's final action in the remedial investigation and feasibility study removal action process . . . the statute of limitations begins running when the remedial investigation and feasibility study removal action are completed by the EPA's issuance of its record of decision"); *United States v. R.A. Corbett Transport, Inc.,* 785 F.Supp. 81, 82 (E.D.Tex. 1990) ("all Site activities conducted by the United States, including the remedial investigation, were removal actions under the meaning of CERCLA").

Aberdeen asserts that the photographs of December 23, 1991, were taken for the purpose of preparing for this litigation. The government argues that Aberdeen has no proof to corroborate its assertion, and that the interim report clearly shows that the purpose of the December 23, 1991, visit was to ascertain whether the grading and grass seeding had been completed. The court finds that the visit on December 23, 1991, was conducted as part of the government's monitoring, assessing and evaluating of the Prairie Metals Site. It appears that the visit revealed the site had not been hydro-seeded as contracted. Not only does this finding make the complaint timely, but also, raises a material issue of fact whether James Bell completed the landscaping of the site on October 16, 1991, or whether he was required to reseed in the spring of 1992. There are

definite genuine issues of fact which preclude granting Aberdeen's motion for summary judgment.

The government has asked the court to grant summary judgment that the statute of limitation had not run at the time that the complaint was filed. Generally, the sheer fact that the court allows a case to proceed means that it is not time barred. Although odd, there does not seem to be anything to prevent the court from declaring that the complaint was timely filed. Aberdeen argues, but fails to present any evidence, that the purpose of the December 23, 1991, photography visit to the site was to prepare for this cost recovery action. Clearly, the interim report submitted by the TAT indicates that the visit was authorized to determine whether work had been completed. This would fall within the "monitor, assess, and evaluate the release or threat of release of hazardous substances, ..." portion of the statutory definition of remove. *See Chromatex*, 832 F.Supp. at 902. Accordingly, the government's motion for summary judgment is well taken. If the proof at trial indicates otherwise, nothing prevents the court from reversing this finding.

Both parties have additionally sought to strike affidavits and other evidence which the other submitted in support of their motion for summary judgment. The court is quite capable of disregarding legal conclusions and other inappropriate "supporting" evidence when ruling on a motion for summary judgment. Accordingly, both parties' motions to strike evidence submitted in support of the other's motion for summary judgment are denied.

The court does not find either parties' snide references to the other's arguments as either helpful as to the matter before the court or humorous. The parties are encouraged to continue to argue their positions, but without making childish comments about the other's argument. An order in accordance with this memorandum shall be issued.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In accordance with a memorandum opinion issued concurrently, IT IS ORDERED:

That the plaintiff's motion for summary judgment in regards to the timeliness of the filing of the complaint is granted;

That the defendants' motion for summary judgment is denied;

That the plaintiff's motion to strike is denied;

That the defendants' motion to strike is denied.

SO ORDERED.