**UNITED STATES of America, Plaintiff,**

v.

**Eddie CANTRELL, et al., Defendants.**

**Nos. C–1–97–981, C–1–98–247.**

United States District Court, S.D. Ohio, Western Division.

March 23, 2000.

Lois J. Schiffer, U.S. Dept. of Justice, Environmental Enforcement Section,

Washington, DC, Gerald Francis Kaminski, U.S. Attorney, Cincinnati, OH, for U.S., plaintiff.

Christopher Richard Schraff, Porter, Wright, Morris & Arthur, Columbus, Oh, for Mansbach Realty Co., Oak Hill Foundary & Mach. Works, CSX Transp. Inc. and L.R. Landen Ray Daniels, defendants.

Ann Wightman, Faruki Gilliam & Ireland, Dayton, OH, for Amcast Industrial Corp., third-party plaintiff.

Frederic X. Shadley, Elizabeth Conkin, Benesch, Friedlander, Coplan & Aronoff, Cincinnati, OH, for American Elec. Power Service Corp., General American Transp. Corp. and Ohio American Power Co., third-party defendants.

Mark Alan Norman, Vorys Sater Seymour & Pease, Cincinnati, OH, for Ashland Oil Inc., third-party defendant.

Philip Joseph Schworer, Greenbaum Doll & McDonald, Cincinnati, OH, for Baker Iron & Metal Co. Inc., third-party defendant.

Phillip Bruce Leslie, McBrayer McGinnis Leslie & Kirkland, Greenup, KY, for City of Flatwoods Mayors Office, third-party defendant.

Carl John Schmidt, III, Wood & Lamping, Cincinnati, OH, for Crounse Corp., third-party defendant.

Robert Bowman Craig, Taft Stettinius & Hollister, Cincinnati, OH, Charles H. Pangburn, III, Hemmer Spoor Pangburn DeFrank & Kasson PLLC, Ft. Mitchell, KY, for David J. Joseph Co., third-party defendant.

Thomas J. Grever, Squire Sanders & Dempsey, Columbus, OH, for Gulf Chemical & Metallurgical Corp., third-party defendant.

Jeffrey Joseph Harmon, Cors & Bassett, Cincinnati, OH, for Helm Financial Corp, third-party defendant.

Jonathan P. Saxton, Rendigs Fry Kiely & Dennis, Cincinnati, OH, for Ingram Industries Inc., Brooks Beverage Management and Woodrow W. Mays & Associates, third-party defendants.

Leigh Gross Johnson, Vanantwerp Monge Jones & Edwards, Ashland, KY, for Kentucky Elec. Steel, third-party defendant.

Todd Matthew Powers, Schroeder Maundrell Barbiere & Powers, Cincinnati, OH, for Merdie Boggs & Sons and Superior Marine Ways Inc., third-party defendants.

Paul William Casper, Jr., Christopher S. Habel, Frost & Jacobs, Cincinnati, OH, for Norfolk Southern Railway Co., AK Steel and City of Ironton, third-party defendants.

Stanley Jerome Aronoff, Gregory Mohar, Aronoff, Rosen & Stockdale, Cincinnati, OH, for Nugent Sand Co., third-party defendant.

Joseph Dominic Lonardo, Vorys Sater Seymour & Pease, Columbus, OH, for Ohio River Co., third-party defendant.

Stephen Lounsbury Black, Graydon Head & Ritchey, Cincinnati, OH, for Progress Rail Services Corporations, third-party defendant.

C. Robert Schaub, Schaub Law Offices, L.C., Huntington, WV, for Ross Brothers Const. Co., third-party defendant.

James Foley Brockman, Lindhorst & Dreidame, Cincinnati, OH, for Southpoint Barge Co, third-party defendant.

Randall Lee Lambert, Ironton, OH, for City of Russell and City of Ironton, third-party defendants.

Charles Richard Dyas, Jr., Vincent Boyd Stamp, Dinsmore & Shohl, Cincinnati, OH, for Crace Const. Co., third-party defendant.

Anthony Joseph Iaciofano, Benjamin, Yocum & Heather—1, Cincinnati, OH, for Lawrence County Medical Center, third-party defendant.

Anthony Joseph Iaciofano, Benjamin, Yocum & Heather, Cincinnati, OH, W. Michael Frazier, Frazier & Oxley LC, Huntington, WV, for Muth Lumber, third-party defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DLOTT, District Judge.

This matter is before the Court on Plaintiff United States of America's Motion for Partial Summary Judgment (doc. 101). Plaintiff seeks the Court to assess liability against Defendant Amcast Industrial Corporation ("Amcast") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended by the Superfund Amendments and Reorganization Act of 1986 ("SARA"), 42 U.S.C. § 9601 et seq. The United States is seeking to recover the costs expended by the United States Environmental Protection Agency ("EPA") in responding to environmental hazards at the Automatic Containers Superfund Site near the City of Ironton in Lawrence County, Ohio ("the Site"). Defendant Amcast opposes the Motion for Partial Summary Judgment. The Court has reviewed the parties' briefs and voluminous supporting documents. Upon consideration of the law and the facts, Plaintiff's Motion for Partial Summary Judgment (doc. 101) is hereby **GRANTED**.

## I. BACKGROUND

### A. Factual Background

The Site comprises 8.5 acres near Ironton, Ohio. It was used as a landfill until approximately September or October 1993 and it accepted residential, industrial, commercial, demolition, and municipal wastes during its period of operation. Amcast deposited the wastes from its foundry at the Site from approximately September 1978 until November 1979. Amcast generated 200 tons or greater of spent foundry sand each day and disposed of the sand at the Site. Additionally, they disposed of 1000 tons or greater of calcium carbide slag in the fourteen month period. (Doc. 101, ex. 1, ¶ 4–5; Doc. 101, ex. 3, p. 167–72).

The calcium carbide slag constituted a hazardous substance at the time it was generated because it was reactive and produced acetylene gas when exposed to water. Amcast officials testified that the slag was treated with moisture before it was disposed of at the Site rendering it non-reactive and non-ignitable, but there is also testimony that a truckload of slag caught fire on its way to the Site. As for its foundry sands, Amcast admitted that its sands contained minuscule amounts of substances identified as hazardous by CERCLA. The sands were mixed with other foundry wastes at the Amcast facility before being disposed of at the Site. The Amcast wastes contained at least trace amounts of arsenic, cadmium, lead, furan, phenol, toluene, naphthelene, ethylbenzene, and xylenes. However, Amcast argued that scientific articles established that spent foundry sands do not present environmental concerns. (Doc. 101, ex. 3, p. 43–67; Doc. 101, ex. 4, p. 19–33; Doc. 101, ex. 17, p. 16–19).

In September 1993, wastes at the Site caught on fire. State and local officials were unable to extinguish the flames or control the smoke and gases being released. Tests performed by the Portsmouth Local Air Agency demonstrated that various hazardous substances were being released. The hazardous substances found included those found in the wastes Amcast disposed of at the Site. On October 13, 1993, Ohio Governor George Voinovich declared a state of emergency for Lawrence County, Ohio. The Ohio Environmental Protection Agency ("OEPA") requested intervention from the federal EPA. (Doc. 101, ex. 1, ¶ 5–10; Doc. 101, ex. 2, p. 3–5; Doc. 107, ex. 29, p. 5).

The EPA mobilized at the Site on November 18–19, 1993. Officials performed additional tests on the water and air conditions in and around the Site. The tests showed that conditions at the site threatened the release of additional hazardous substances into the environment. Thus, the EPA began an emergency removal action. (Doc. 101, ex. 1, ¶ 8–10).

The EPA's primary response activity was the construction of a clay cap over the

burning landfill. The clay cover was intended to serve four purposes: (1) suppress the release of airborne contaminants; (2) extinguish the fire; (3) reduce the risk of direct contact with the landfill wastes; and (4) minimize water-flow through the landfill. The installation of the clay cap and a final grade and restoration were completed in April 1994. The OEPA then adopted and independently implemented an operation and maintenance plan for the Site. According to that plan, OEPA was to monitor landfill temperatures, surface water quality, air quality in and around the Site, and gas emissions. The OEPA continued to provide monthly progress reports to the EPA. (Doc 101, ex. 1, ¶ 11; Doc 101, ex. 16; Doc. 107, ex. 29, p. i–ii).

By November 1994, landfill temperature testing indicated that the fire had been extinguished. EPA officials conducted a final inspection of the Site on November 2, 1994 with members from the OEPA, the technical assistance team, and various local agencies involved in the clean-up. No independent testing was completed that day, but officials visually inspected the Site and ensured that all of the control measures were operational. These control measures included the drainage system and the clay cover. After the final inspection, the EPA's involvement with the Lawrence County, Ohio Site was limited to enforcement actions. The OEPA took responsibility for maintaining the Site. (Doc. 101, ex. 1, ¶ 17; Doc. 101, ex. 16, p. 000058–59; Doc. 107, ex. 22, p. 265–68; Doc. 107, ex. 23, p. 187–88).

## B. Procedural Background

The United States filed a civil action, No. C–1–97–981, for the recovery of costs under CERCLA, 42 U.S.C. § 9607, against Defendants Eddie Cantrell and Karen Cantrell on October 31, 1997. The Cantrells were alleged to be operators of portions of the Site when hazardous substances were disposed of at the Site. The United States filed an Amended Complaint in case number C–1–97–981 on January 2, 1998 under the same CERCLA provision adding as Defendants (1) Mansbach Realty

Co. d/b/a Mansbach Metal Co. ("Mansbach") and (2) Oak Hill Foundry and Machine Works, Inc. ("Oak Hill"). The Amended Complaint alleged that both Mansbach and Oak Hill were liable under § 9607 for arranging for disposal of hazardous substances at the Site.

The United States filed a second civil action, No. C–1–98–247, for the recovery of costs under CERCLA against Defendant Ohio Power Company ("Ohio Power") on April 1, 1998. Defendant Ohio Power was alleged to have arranged for the disposal of hazardous substances at the Site. The United States filed an Amended Complaint in case number C–1–98–247 on April 27, 1998 adding Amcast Industrial Corporation f/k/a Dayton Malleable, Inc. ("Amcast") as a Defendant. The Amended Complaint alleged that Amcast also arranged for disposal of hazardous substances at the Site.

After filing the second action, the United States moved the Court to consolidate case numbers C–1–97–981 and C–1–98–247. The Court consolidated the cases in its Case Management Order issued on October 7, 1998 and the subsequent filings in the consolidated cases have been under case number C–1–97–981.

Defendant Amcast has filed cross-claims and third-party complaints. Defendant Amcast filed a Third–Party Complaint under CERCLA against ten Third–Party Defendants on June 19, 1998 alleging that each arranged for disposal of hazardous substances at the Site. Defendant Amcast filed a second Third–Party Complaint on April 13, 1999 against twenty-seven Third–Party Defendants. Amcast alleged that the majority of these Third–Party Defendants sold metals and recyclables to Defendant Mansbach, some of which Mansbach later disposed of at the Site. This group of Third–Party Defendants has been referred to as the Mansbach Suppliers throughout this litigation. Amcast alleged that the metals and recyclables that the Mansbach Suppliers sold to Defendant Mansbach contained hazardous substances.

Amcast alleged that the remaining Third–Party Defendants arranged for disposal of hazardous substances at the Site.

The majority of Defendants and Third–Party Defendants have attempted to enter into consent decrees with the United States and thus settle their claims. Amcast currently is opposing one set of four consent decrees the United States is seeking the Court to enter. Amcast has not contested other consent decrees and has moved to dismiss complaints which it filed against several Third–Party Defendants.

In the Motion for Partial Summary Judgment currently before the Court, the United States is seeking the Court to assess liability against Defendant Amcast as a matter of law under CERCLA, 42 U.S.C. § 9607(a). The issue of the amount of damages, if any, has been reserved until a later date. Defendant Amcast opposes the Motion for Partial Summary Judgment and argues that it is premature to assess liability against it as a matter of law.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issue of material fact exists, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it shoulders the burden of proof, the moving party must make a showing that is " 'sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.' " *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)) (emphasis omitted). For those issues where the moving party will *not* have the burden of proof at trial, the movant must "point[ ]out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the defendant moves for summary judgment based on the lack of proof of a material fact, "[t]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient" to overcome the summary judgment motion. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. ANALYSIS

### A. CERCLA

The purpose of CERCLA is to facilitate the prompt remedial clean-up of hazardous waste sites by assessing the costs of the cleanup to the persons found to be responsible for the presence of the hazardous substances. *See Kalamazoo River Study Group v. Rockwell Int'l Corp.,* 171 F.3d

1065, 1068 (6th Cir.1999) (citing *United States v. R.W. Meyer,* 889 F.2d 1497, 1500 (6th Cir.1989)). Persons who can be found liable under CERCLA, sometimes referred to as potentially responsible parties ("PRPs"), include:

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances.

42 U.S.C. § 9607(a).[1] These arrangers "shall be liable" under CERCLA for "all costs of removal or remedial action incurred by the United States Government ... not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A).

■ The United States bears the burden of establishing a prima facie case under § 9607(a) when seeking to recover the costs of an EPA clean-up. If the prima facie case is met, then "[l]iability for cost recovery actions brought against PRPs under [§ 9607(a) ] is strict." *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.,* 153 F.3d 344, 348 (6th Cir.1998). That is, the United States need not prove that a PRP is at fault for the hazardous substance incident requiring the clean-up or that a PRP is responsible for a certain share of the United States' response costs. *See id.* The United States need only establish that the PRP is "liable" under the statute. The United States must prove each of the following elements to establish liability for costs against Defendant Amcast: (1) the Site is a "facility" as defined in the statute; (2) a release or threatened release of a hazardous substance(s) has occurred at the Site; (3) the release has caused the United States to incur costs; and (4) Amcast is an "arranger" as defined in § 9607(a)(3) above. *See Kalamazoo*

*River Study Group,* 171 F.3d at 1068; *Centerior Serv. Co.,* 153 F.3d at 348.

Section 9067(a) begins with the following prefatory language: "Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section...." Therefore, PRPs can avoid the strict liability imposed under § 9067(a) only by establishing one of the enumerated defenses in § 9067(b). Section § 9067(b) provides as follows:

> There shall be no liability under subsection (a) for a person otherwise liable who can establish by a preponderance of the evidence that the release or threatened release of a hazardous substance and the damages resulting therefrom were caused solely by—
>
> (1) an act of God;
>
> (2) an act of war;
>
> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ... if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all the relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions....

42 U.S.C. § 9607(b). In the instant case, if the United States establishes each element of its prima facie case and if Defendant Amcast fails to establish an affirmative defense, then this Court must hold Amcast strictly liable for the response costs.

■ Liability under CERCLA § 9607(a) is always strict, but it can also be joint and several regardless of fault. *See Centerior*

---

1. Other categories of PRPs under § 9607(a) are owners and operators of facilities and persons who transport hazardous substances to facilities.

*Serv. Co.*, 153 F.3d at 348. PRPs can defeat the imposition of joint and several liability only by affirmatively demonstrating that the harm is divisible. *See id.* Joint and several liability under CERCLA is "to be determined in accordance with 'traditional notions and evolving principles of common law.'" *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1507 (6th Cir. 1989) (quoting *United States v. Chem–Dyne Corp.*, 572 F.Supp. 802, 808 (S.D.Ohio 1983)). Courts in the Sixth Circuit turn to the Restatement (Second) of Torts (1965) for the traditional and evolving principles of common law that will determine divisibility. *See United States v. Township of Brighton*, 153 F.3d 307, 318 (6th Cir.1998). The Restatement instructs:

> (1) Damages for harm are to be apportioned among two or more causes where
>
> (a) there are distinct harms, or
>
> (b) there is a reasonable basis for determining the contribution of each cause to a single harm.
>
> (2) Damages for any other harm cannot be apportioned among two or more causes.

Rest. (2d) Torts § 433A (1965).

■ The Sixth Circuit has not defined "for all time what is a reasonable basis for divisibility and what is not," but it has given limited guidance. *Township of Brighton*, 153 F.3d at 319. Divisibility determinations are to be based on legal considerations of causation, not on equitable considerations of fairness. *See id.* Considerations of fairness which are not relevant to divisibility determinations include the degree of care taken by the PRPs and the degree of cooperation by the PRPs with the government to prevent harm to the environment or to the public.[2] *See id.* at 318–19. The Restatement gives as an example of an indivisible loss the situation where both Company A and Company B spill oil into a stream, C's cattle drink from the stream, and then C's cattle die from oil poisoning. The Restatement instructs that C may recover a judgment for the full amount against Company A, or Company B, or both. *See* Rest. (2d) Torts § 433A, illustrations 14 and 15.

Allowing PRPs to establish divisibility of harm greatly confuses determinations of CERCLA liability. The divisibility analysis can weaken the strict liability nature of CERCLA actions under § 9607(a). *See Township of Brighton*, 153 F.3d at 318. "This is because defendants who can show that the harm is divisible, and that they are not responsible for any of the harm, have effectively fixed their own share of the damages at zero." *Id.* However, any defendant PRP seeking to establish zero damages and in effect zero liability faces an extremely difficult road. "Given the nature of hazardous waste disposal, rarely if ever will a PRP be able to demonstrate divisibility of harm, and therefore joint and several liability is the norm." *Centerior Serv. Co.*, 153 F.3d at 348.

Nonetheless, it is important not to confuse the issues of strict liability and joint and several liability. If the United States establishes a prima facie case against Defendant Amcast, Amcast will be held strictly liable. Amcast, however, may defeat joint and several liability by establishing that the harm is divisible. This confusion regarding the establishment of liability is perhaps why the Sixth Circuit in *R.W. Meyer* deferred the divisibility analysis in a § 9607(a) action and stated that "[t]o the extent that Meyer can demonstrate the divisibility of the harm and that it paid more than its fair share, it will be entitled to relief in its action for contribution currently pending against the other defendants." 889 F.2d at 1508.

---

2. These fairness considerations may be relevant in a CERCLA action for contribution under 42 U.S.C. § 9613 brought by one PRP against other PRPs it believes are responsible for the response costs. *See Township of Brighton*, 153 F.3d at 318. Contribution claims cannot be filed against a PRP who has entered into a judicially-approved consent decree settling its CERCLA liability with the United States regarding matters addressed in the settlement. 42 U.S.C. § 9613(f)(2).

## B. Defendant Amcast's Liability

The Court has considered the evidence in light of the statutory framework and controlling legal authority. For the reasons explained at length below, the Court holds that Amcast is both strictly liable and jointly and severally liable. The United States has proven its prima facie case of liability. Amcast has not established a valid defense to the imposition of liability nor has it proven that the harm at the Site was divisible. Finally, Amcast has not established that additional discovery would enable it to provide a valid defense.

### 1. Prima Facie Case and the Statutory Affirmative Defenses

To determine Defendant Amcast's liability, the Court must initially determine whether the United States has established a prima facie case and then whether Amcast has proven an affirmative defense to liability. The United States has put forth evidence regarding each element of its prima facie case to establish liability against Amcast pursuant to 42 U.S.C. § 9607. The United States must first establish that the Site is a "facility." *See Kalamazoo River Study Group,* 171 F.3d at 1068; *Centerior Serv. Co.,* 153 F.3d at 348. CERCLA defines a "facility" as "(A) any ... landfill ... or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9). The United States next must establish that a release or threatened release of a hazardous substance(s) has occurred at the Site and that the release or threatened release caused the United States to incur costs. *See Kalamazoo River Study Group,* 171 F.3d at 1068; *Centerior Serv. Co.,* 153 F.3d at 348.

The United States has put forth substantial evidence, including documentation from the EPA, that the Site was a facility containing hazardous substances and that hazardous substances were released into the environment when the fire began in September 1993. It has also put forth substantial evidence that it incurred more than one million dollars in costs in responding to the fire at the Site. Its response activities included testing the quality of air and water around the Site, applying the clay cover to the Site, and installing a fence around the Site. Defendant Amcast has not put forth any evidence opposing this information. Therefore, the Court finds that the first three prima facie elements are established as a matter of law. *See Liberty Lobby, Inc.,* 477 U.S. at 257, 106 S.Ct. 2505 (stating that the nonmoving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

The fourth prima facie element the United States must establish is that Amcast arranged for disposal or transportation of hazardous material for disposal at the Site as delineated in 42 U.S.C. § 9607(a)(3). Amcast officials testified that the company disposed of 200 tons or greater of spent foundry sand each day at the Site and a total of 1000 tons or greater of calcium carbide slag at the Site during the time period of approximately September 1978 until November 1979. Finally, the evidence shows that the wastes Amcast disposed of contained at least trace amounts of some of the same hazardous substances which EPA testing revealed were released by the fire at the Site. Amcast does not specifically refute this evidence in its Memorandum in Opposition to the Motion for Partial Summary Judgment.

Amcast, however, contended in its responses to discovery requests that the calcium carbide slag had been treated and rendered non-reactive and non-ignitable. Amcast further contended that its foundry sand contained only minuscule or trace amounts of hazardous substances which were not at such levels as to require response or remediation. (Doc. 101, ex. 17, p. 16–19). Amcast reiterates these arguments in opposing the instant Motion. Moreover, Amcast opposes granting summary judgment on a "causation" ground related to the fourth element of the prima facie case. Amcast objects to granting

summary judgment on the grounds that the United States has refused to produce the underlying response costs documents. Amcast argues that the costs documents would provide evidence as to what harm the EPA was addressing and who was potentially liable for causing that harm.

Amcast's arguments are unavailing. As explained earlier, the United States does not need to prove "causation" as that notion is traditionally understood in tort law to establish liability under § 9607(a). The United States does not need to establish that Amcast is at fault for the release of hazardous substances at the Site or that Amcast is responsible for a certain percentage of the United States' response costs. *See Acme Scrap Iron & Metal Corp.,* 153 F.3d at 348; *see also United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 721 (2d Cir.1993) ("What is not required is that the government show that a specific defendant's waste caused incurrence of clean-up costs."); *United States v. Rohm and Haas,* 939 F.Supp. 1142, 1150 (D.N.J.1996) ("[F]inding a causal connection between [the defendant's] wastes and USA–EPA's costs is not required by the statute."). Rather, the United States only needs to prove that Amcast is liable under the CERCLA statute by establishing the prima facie elements.

■ As to the whether Amcast disposed of only trace amounts of hazardous substances, the Court reiterates that liability under CERCLA is strict and the amount of hazardous substances an arranger disposed of is not relevant for purposes of establishing liability. "If the government can show that a party is responsible for the presence of a hazardous substance at a site, liability will be imposed regardless of the quantity of the hazardous substance which the party is responsible for." *United States v. Atlas Minerals and Chemicals, Inc.,* 797 F.Supp. 411, 416 n. 6 (E.D.Penn.1992); *see also United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 720 (2d Cir.1993) (stating that the absence of quantity requirements in CERCLA leads to the conclusion that Congress intended for definition of hazardous substances to include even minimal amounts of pollution); *Rohm and Haas Co.,* 939 F.Supp. at 1149–50 (stating that all § 9607 requires is that the defendant disposes of waste and that the hazardous materials found in defendant's wastes are also found at the site). The amount Amcast disposed of may be relevant to the question of divisibility or contribution, but the Court will reserve those issues for later discussion.

Finally, the Court finds that the costs documentation which the United States has not produced is not relevant to the issue of whether Amcast arranged for disposal of hazardous substances at the Site. Costs documents are relevant to the effect of the hazardous substances disposed of at the Site. They are not probative as to whether the wastes Amcast disposed of at the Site contain hazardous substances. The Court concludes that the United States has established a prima facie case of liability under CERCLA against Defendant Amcast.

Having determined that the United States has met it prima facie burden pursuant to § 9607(a), the Court next turns to whether Defendant Amcast has established an affirmative defense to liability. Amcast has not argued, and nothing in the record suggests, that the release of hazardous substances at the Site was caused by an act of God or an act of war. *See* 42 U.S.C. § 9607(b)(1) & (2). Accordingly, Amcast has not established the first or second affirmative defenses. The third affirmative defense requires Amcast to establish that it acted with due care with respect to hazardous materials and that it took precautions against the foreseeable acts of third parties and the consequences thereof. *See* 42 U.S.C. § 9607(b)(3). Amcast has not presented evidence, nor even implied in its arguments, that it took precautions against the foreseeable acts and omissions of third parties and the consequences resulting therefrom. Therefore, the Court concludes that Amcast has failed to establish an affirmative defense to strict

liability under CERCLA, 42 U.S.C. § 9607(b).

### 2. Amcast's "Defenses" Regarding the Unproduced Response Costs Documentation

Instead of arguing the statutory affirmative defenses, Amcast argues that partial summary judgment should be denied because the United States has not produced the response costs documentation it requested. Amcast posits that the response costs documentation is necessary to three of its potential defenses to liability: (1) the statute of limitations, (2) causation, and (3) consistency of the costs with the National Contingency Plan ("NCP"). Rule 56(f) of the Federal Rules of Civil Procedure permits the Court to deny an application for judgment or order a continuance to allow a party opposing a motion for summary judgment to obtain sufficient discovery to support its opposition.

Before proceeding, it is important to recognize that the Court ordered bifurcated discovery in the Case Management Order issued on October 7, 1998. Non-expert discovery on matters related to liability was to be completed first with a deadline of April 30, 1999. That deadline was later extended until May 26, 1999. Limited discovery on the amount of response costs incurred by the United States was to be produced within 30 days after the Court's entry of a Stipulated Protective Order, but the remainder of the discovery on the amount of response costs was deferred until after a settlement conference was held on May 26, 1999. The parties have not agreed to and the Court has not issued any subsequent scheduling order. To the Court's knowledge, the United States still has not produced the underlying costs documentation.

The United States points out that it has produced response costs documentation, even if it has not produced all of the underlying documentation requested. The United States has produced an Itemized Costs Summary outlining all EPA expenditures at the Site for several years including 1993 and 1994. The United States also produced reports of indirect costs related to the Site for the relevant years including travel, shipping purchases, state assistance programs, and contractor costs. Additionally, the United States provided in its answers to interrogatories the names of employees of the EPA, the OEPA, other state agencies, and various contractors who would have information regarding the conditions at the Site and actions taken in response to conditions at the Site. (Doc. 107, ex. 34; Doc. 107, ex. 30, p. 7–11). In sum, the United States argues that it produced all evidence relevant to the issue of liability, that it followed the Court's scheduling order, and that Amcast could have sought additional discovery from non-parties if it believed the information to be relevant to liability.

Amcast argues in an affidavit that the unproduced costs documentation is relevant to its three defenses and that specifically it would indicate:

(a) duration of removal activities, (b) when the testing analysis, and monitoring of the Site was performed, (c) when the contractors and subcontractors performed their work, (d) when the contractors and subcontractors last removed waste from the Site, (e) when the physical work to cap the Site with clay, grade the Site, seed the Site with grass, and fence the Site for security purposes was completed, and when the contractors and subcontractors invoiced the government for such work, (f) when the contractors and subcontractors last billed the Government for the removal work, and (g) when the Government's removal action was completed, and turned over to the Ohio EPA for operation and maintenance work.

(Doc 106, ex. 1, ¶ 7). The affiant, Shaun A. Roberts, is Amcast's legal counsel in these proceedings.

The Court believes the Motion for Partial Summary Judgment can be resolved without delving into whether the United States has met its obligations to produce

the underlying costs documentation. The Court will proceed by looking at each potential defense individually and determining if additional discovery would be beneficial.

### a. Causation defense

Amcast's first defense is the "causation" defense, which is not fully explained. Amcast argues that it is unable to fully present its causation defense without the unproduced costs documentation. Amcast posits that the response costs documents will shed light on the hazards presented at the Site, which parties are potentially liable for causing that harm, and the response of the EPA in addressing the hazards.

Amcast bases its causation defense on the argument that the United States "cannot prevail on its claims against Amcast absent a demonstration that Amcast's wastes caused the release." Defendant Amcast Industrial Corporation's Rule 56(f) Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, p. 11. This is not an accurate statement of the law. The Court has already explained and will not do so again here that the United States must only establish its prima facie case, not proximate causation, in order for the Court to hold Amcast strictly liable. The United States has met this burden. Additionally, Amcast bears the burden of proof it if attempts to defeat the imposition of joint and several liability by establishing divisibility. Setting aside for now the issue of joint and several liability, the Court concludes that the unproduced costs documentation cannot as a matter of law support a "causation" defense to strict liability.

### b. Statute of limitations

Amcast's second potential defense to liability is that the United States may not have filed its initial Complaint within the CERCLA statute of limitations. The United States has referred to its clean-up action at the Site as a "removal" action, and the EPA also consistently referred to it as such in their internal memoranda which have been provided as evidence in support of this Motion. CERCLA clean-ups can be classified as either removal actions or remedial actions. There are different statutes of limitations for filing cost response actions depending upon which type of action the EPA took. Removal actions are defined as follows:

> '[R]emoval' means the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

42 U.S.C. § 9601(23). The statute of limitations for a removal action is "within 3 years after the completion of a removal action." 42 U.S.C. § 9613(g)(2)(A).

The original Complaint was filed on October 31, 1997. The parties agree that in order for the statute of limitations to be satisfied in their filings the removal action must not have been completed until after October 31, 1994. The United States posits that the removal action was not completed until November 2, 1994 when EPA officials conducted their final site inspection. At that inspection, no additional testing was performed, but the officials verified that the control measures put in place to prevent further release of hazardous materials were working.

Defendant Amcast objects that the actual completion date may have been much earlier than November 1994. It points out that the clay cap installation was completed six months earlier in April 1994. Amcast argues that the United States must produce the response costs documentation in order for Amcast and the Court to

determine when the EPA and its contractors and subcontractors completed their work. Amcast states that such documentation would reveal such information as when the contractors and subcontractors last billed the United States for removal work, when the work was performed, and when testing and monitoring of the Site was performed.

Amcast's arguments do not withstand scrutiny. The issue can be boiled down to a single question of law: Does the final Site inspection conducted on November 2, 1994 qualify as an act of removal? If the Site inspection does qualify as the final act of removal, it is irrelevant how much work was done each day and each week between the completion of the clay cap in April 1994 and the final site inspection in November 1994. Therefore, further discovery into what the EPA, its contractors, and its subcontractors did and did not accomplish prior to November 1994 will not aid the Court's determination of whether the statute of limitations is satisfied.

■ The Court turns now to the dispositive question. First, the Court notes that statutes of limitation are to be liberally construed in favor of the government. *See United States v. Navistar Intern. Transp. Corp.*, 152 F.3d 702, 707 (7th Cir.1998) (stating that courts must construe ambiguities in the statute of limitations in favor of the government); *United States v. Akzo Nobel Coatings, Inc.*, 990 F.Supp. 897, 904 (E.D.Mich.1998) (stating that courts must "strictly construe statutes of limitation in favor of the Government where application of them might otherwise bar its rights"); *United States v. Chromatex, Inc.*, 832 F.Supp. 900, 902 (M.D.Penn.1993) (stating that courts give a liberal interpretation to statutes of limitations).

■ Turning then to the CERCLA statute, removals include "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances." 42 U.S.C. § 9601(23). It is uncontroverted that EPA officials conducted a final walk-through of the Site on November 2, 1994 with officials

from state and local agencies. Their purpose was to ensure that the measures which had been put into place at the Site to control further release of hazardous substances were operational. Although no additional testing was done, the officials did assess the risk of future releases of hazardous substances by verifying that the drainage system was working and that the clay cap was not suffering from erosion. The Court holds that the EPA's final Site inspection falls under the category of removal actions because it was done to monitor the threat of release of hazardous substances.

Other district courts have agreed that final site inspections are part of the removal action in analogous circumstances. In *United States v. City of Aberdeen*, 929 F.Supp. 989 (N.D.Miss.1996), clean-up work at the facility was completed on October 16, 1991. *See id.* at 991. However, the court held that the statute of limitations did not begin to run until sometime after December 23, 1991 when the EPA had the site photographed to ensure that all the work had been completed. *See id.* at 993. The Middle District of Pennsylvania came to the same conclusion on analogous facts in *Chromatex*. The *Chromatex* court found that the inspection of remote water meters, photographing the site to ensure earlier work was properly done, and completion of the final pollution report all qualified as removal acts for purposes of determining when the statute of limitations began to run. *See id.* at 902. The acts counted as removal acts because each was "clearly related to the assessment of the work that was previously done onsite." *Id.*

In conclusion, because the final Site inspection on November 2, 1994 was a part of the removal activities, the filing of the initial Complaint on October 31, 1997 was timely. Further discovery on what removal actions the EPA and its contractors and subcontractors undertook between the completion of the clay cap in April of 1994

and the final Site inspection is unnecessary.

### c. Consistency with the National Contingency Plan

Defendant Amcast asserts as a final potential defense to liability that the costs expended by the EPA in the removal action may not have been consistent with the national contingency plan. In a costs response action, the United States can only recover "all costs . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). By its very nature, this asserted "defense" is not relevant to whether Amcast is liable for response costs. This issue will be relevant when these proceedings have entered into the damages phase. Therefore, the Court will not deny partial summary judgment on the issue of liability because the unproduced costs documentation may shed light on whether the costs expended were consistent with the national contingency plan.

### d. Conclusion on Amcast's potential defenses and the response costs documentation

The Court will not deny Plaintiff's Motion for Partial Summary Judgment pursuant to the authority of Rule 56(f) of the Federal Rules of Civil Procedure. The discovery Defendant Amcast seeks from the United States regarding response costs documentation will not enable Amcast to present a successful defense to strict liability. The statute of limitations was not violated as a matter of law because the final Site inspection on November 2, 1994 was a removal activity. Finally, the issue of whether the costs the United States seeks to recover are consistent with the national contingency plan relates only to the issue of damages, not to the issue of liability now before the Court.

### 3. Joint and Several Liability

The issue of joint and several liability is the only issue left to resolve for purposes of the Motion for Partial Summary Judgment. The Court has already decided that Defendant Amcast is strictly liable under 42 U.S.C. § 9607(a) because the United States established a prima facie case of liability and Amcast failed to prove an affirmative defense. The Court has also decided that there is no reason to deny partial summary judgment on the issue of strict liability merely because the United States has not produced all of the response costs documentation.

Amcast has not expressly asserted that it is not jointly and severally liable. Additionally, Amcast has put forth no affirmative evidence that the harm at the Site was divisible as "determined in accordance with 'traditional notions and evolving principles of common law.' " *R.W. Meyer, Inc.*, 889 F.2d at 1507 (quoting *Chem–Dyne Corp.*, 572 F.Supp. at 808). Instead, Amcast only has stated that it is unable to present its "causation" defense because the United States has not produced all of is costs response documentation. The issue the Court must decide, then, is whether the unproduced response costs documents would be relevant to the determination of whether the harm at the Site was divisible and whether Amcast can defeat joint and several liability. The Court notes again that a PRP will only be able to prove divisibility of hazardous substance harms in rare cases and that joint and several liability is the norm. *See Centerior Serv. Co.*, 153 F.3d at 348.

As the party seeking to defeat a motion for summary judgment pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Amcast must demonstrate how the opportunity to conduct additional discovery would enable it to rebut the motion. *See Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 409 (6th Cir.1998). Bare allegations or vague assertions of need without supporting proof are insufficient. *See id.; Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed.Cir.1996). Amcast gives numerous reasons, by means of the affidavit of its counsel as quoted in the earlier discussion of the unproduced discovery, why it needs additional discov-

ery. Amcast posits the unproduced documents would indicate what testing and removal work was performed and when it was performed. Amcast further argues that this information would establish that its wastes did not cause harm at the Site.

Amcast's "causation" defense can be properly understood only as a defense to the imposition of joint and several liability because what it seeks to prove is that the harm was divisible and that it was not responsible for the harm. The problem is that the documents sought—the underlying response costs documentation—do not appear to be probative of the issue of causation. Relevant evidence that might help establish divisibility would include "proof disclosing relative toxicity, migratory potential, degree of migration, and synergistic capacities of the hazardous wastes at the site." *Alcan Aluminum Corp.*, 990 F.2d at 722.

 The United States has already produced all its reports concerning the conditions at the Site and the work performed at the Site. It has further produced the names of the government workers and non-government contractors and subcontractors who performed work at the Site. The invoice summaries provide an indication of when the work was performed at the Site. The Court simply has no reason to believe that the underlying receipts and invoices would give additional evidence as to the cause of the release or threatened release of hazardous materials at the Site or the possible bases for divisibility.[3]

Therefore, because Amcast has not put forward any affirmative evidence that the harm at the Site was divisible, and because Amcast has not established that the underlying response cost documentation would provide evidence that the harm was divisible, the Court holds that Amcast is jointly and severally liable for the response costs incurred by the United States at the Site.

---

3. The Court will be willing to revisit this issue during the damages stage of litigation if and only if additional, relevant evidence regarding

## IV. CONCLUSION

For the reasons stated above, the Court holds that Plaintiff United States has established that Defendant Amcast is strictly liable and jointly and severally liable for the response costs incurred by the United States at the Automatic Containers Superfund Site in Lawrence County, Ohio. Plaintiff's Motion for Partial Summary Judgment (doc. 101) is hereby **GRANTED.**

**IT IS SO ORDERED.**

the divisibility of harm comes to light during the deferred discovery period on response costs.